Good morning, Your Honors. Adam Pulver for Jillian McAdory, Plaintiff Appellant. I intend to reserve five minutes for rebuttal. Congress included two different definitions of debt collector under the FDCPA. One applies only to those that collect debts owed to another and focuses on whether those entities regularly engage in debt collection activity. That definition was addressed in Henson. It is not at issue in this case. That's the second? Yes. This case involves the other definition, which does not focus on what activities the entity engages in, but rather why it undertakes its business, applying to a business's principal purpose of which the collection of any debts, as opposed to only debts owed to another. And this definition applies to DNF based on the plain meaning of the word purpose. As the Third Circuit held in Barbado Is it any retailer's principal purpose to get debts paid? No, Your Honor. I don't think their principal purpose. And I think that does go to the principal purpose that DNF has claimed in their brief, which is to make money. I think any business certainly has a principal purpose of making money. And you can't pay accounts payable with accounts receivable. You've got to collect the accounts receivable. Correct. However, the term debts under the FDCPA is a defined term. So not every account receivable would be a debt that is collected under the FDCPA. I think, but no one here is disputing that the debts at issue here are debts under the FDCPA, which has a distinct term. And I think this Court in the Menlo Service case under the Service Contract Act also acknowledged that a purpose is a goal or an objective. And which is this and use the same term that the Third Circuit used in Barbado, although not citing it, of a raison d'etre of a business is its principal purpose. An entity thus is a debt collector under this definition where debt collection is the business's dominant objective as opposed to merely an incidental one. And the District Court combined the two terms principal and purpose incorrectly by saying that it can't be a principal purpose if DNF only incidentally benefits from debt collection. But the incidental benefit versus a goal, it goes to the primacy of a purpose, not whether or not the purpose exists. And indeed, the District Court said literally DNF has a purpose of debt collection. So if literally it has a purpose of debt collection, then the question becomes, well, is it its principal purpose or not? Below there was no identification of another purpose and nor could there be because this is a 12B6 motion to dismiss. So the only allegations concern the purpose of debt collection. The District Court in its hearing on oral argument did discuss a purpose of buying debts in order for them to be then later collected on. But that's a preliminary step towards achieving a goal that is not itself a goal or an objective. And again, the purpose inquiry focuses on a means, a means of realizing cash for a debt is to sell it to somebody else, right? That's one means. Correct. Another means is to have somebody else collected for you. Well, I don't think selling a debt is a mean towards collecting the debt, though. So what was the allegation? It depends on what you could define as collecting. I mean, I know Barbado takes the noun collection to mean something other than the verb collecting. And I don't know if I agree with that. But in both cases, they're simply different means of collecting or realizing an asset. A debt is an asset. It's a loan to be repaid. You can realize on it by selling it to Manny Moe and Jack, or you can hire Manny Moe and Jack to go and collect it for you. Those two are two means. The principal purpose is to realize on the debt. I agree, Your Honor, that those might be principal purposes of making money off the debt, but that's not both principal purposes. Those would not both be purposes of debt collection. And debt collection is not defined in the statute as simply making money related to debts. And here, there is no allegation that they are selling these debts or doing anything other than collecting upon them. But when you talk about allegation, again, this is 12b-6. Correct. So we're looking at an amended complaint, and the amended complaint, proposed amended complaint, second amended complaint, alleges at paragraph 6, DNF is a debt collector, as that term is defined in the statute, does not originate loans or extend credit. Its principal purpose is the business of collection of defaulted consumer debts. Yes. And there are also additional allegations in the complaint that would support those earlier statements. Are those allegations sufficient under Iqbal and Twomley with sensitive recitation of the statute? I do not rest solely on those allegations. No, I think there are specific later factual allegations. After purchasing defaulted consumer debts, DNF contracts with a myriad of debt collectors across the country and so forth. Is that what you want us to rely on in paragraph 6? Yes. And also the fact that it derives all or the vast majority of its income from the collection of defaulted debts. Okay. And, for example, in the Fourth Circuit, in the Scott case, relied solely on that factual allegation in determining that a, in that case, it was a lawyer who engaged, who filed collections lawsuits, had a principal purpose of debt collection by, because the principal, the majority of his income came from his debt, from debt collection lawsuits. Okay. But getting to Judge Bego's point, you can't just allege it. So this is, we're at the 12B6 level and this is your allegation and this is primarily a case of statutory interpretation, right? Correct. Okay. So could you give us your best shot at your interpretation of the statute of why you think the district court got it wrong? Sure. The district court incorrectly added a direct interaction requirement into the principal purpose definition. A principal purpose does not limit, does not include a limitation on what activities you must engage in to demonstrate a purpose. One can have a purpose of collecting, of debt collection, whether they have their own employees do it or whether they hire someone else's employees to do it. That doesn't change what the goal or the objective is. When the district court made this ruling, there wasn't really anything out there on this. And I think this is a case of a first impression for our circuit. Yes? Correct. And we have a third circuit case now? Yes. The third circuit was decided while briefing in this court was ongoing. Right. So the district court didn't have the benefit of that. Correct. Okay. And you think that the error was imputing this direct contact requirement? Correct. And I think the district court confirmed that that was its reading on the motion, what was construed as a motion for reconsideration, that the district court believed it was impossible for anyone to have a principal purpose of debt collection without engaging in debt collection activity themselves. That's pretty clear. Let me guide you to another thought that's in my mind. And I wonder what your impression is of that. There's a lot of allegations in the complaint that DNF instructed, it's MNS, right? Correct. Instructed MNS on how to make calls and when to make calls and how many to make calls and how to report, etc. If MNS was following the direct instructions of DNF in such a manner as to under normal tort principles of agency and vicarious liability to be a controlled person of the contractor that they hired, is there vicarious liability? Yes. And this court has not explicitly held whether one must first be a debt collector in order for there to be a vicarious liability. Why would that be necessary? Well, the Third Circuit and the Seventh Circuit have both said that it is. Yeah. I don't understand that. If it's not, if it's not, any retailer or any supplier of goods or services is going to be subject to liability, this would be a dramatic expansion of the statute. We do not believe that in our argument on the bill. That was a question. Do you agree that would very dramatically expand the scope of this statute? I'm not sure what you're saying that that would be. The notion that you'd rely on vicarious liability, that Macy's Department Store contracting out to a debt collector could be vicariously liable unless Macy's Department Store otherwise qualified as a debt collector. Correct. Right? So if we only relied on the vicarious liability prong, we would certainly create a circuit split with the circuits you just mentioned. But setting that aside, it strikes me that it would be a very dramatic expansion of what Congress intended here. Yes, Your Honor. And we are not arguing that that needs. Oh, you're not. We are not arguing that. I was just answering Judge Baez's question. You scared me. Sorry. No, I was just intending to answer Judge Baez's question. You're not taking the position that regardless whether DNF was a debt collector, it should be liable for vicarious liability because it controlled the actions of MNS, which were allegedly a violation of the Federal Act? Correct. We are arguing that if DNF is found to be a debt collector, it can be held. And then you would move on to the next question, which is look at the agency principles and determine whether there is vicarious liability. It cannot be held according to the appellant unless it is a debt collector. Correct. Thank you. Yes. To clarify that. Sorry. And I think it's important, though, to keep those concepts separate because there are some parades of horribles that are examined about debt collectors who might have a principal purpose. Well, how could they be held vicariously liable? But those are two separate questions. And I believe on this complaint, both of those questions, there are sufficient allegations to support, to proceed past the Iqbal Twombly standard. But it's a separate question, one, whether you're a debt collector. Then, two, if you are a debt collector, are you vicariously liable for the acts? And your client lost, basically, in the district court on this first question about the definition of satisfying or not satisfying the definition of debt collector. Correct. Okay. So we don't need to reach the other issues? We do not need to reach the other issues. And I would like to reserve the remaining time for rebuttal, if that's all right with the Court. Thank you. May it please the Court. Brendan Little on behalf of Defendant Appley, DNF Associates, LLC. The FDCPA was codified to regulate interaction between consumers and debt collectors. We know that from the plain reading of the statute. You're quoting the Supreme Court on that? As well as the Supreme Court. The FDCPA specifically — Wait a minute. That's the Supreme Court addressing prong two. I'm sorry? Prong two is the prong that talks about the activities of debt collecting. Prong one is just principal purpose. Correct. But if you look at 1692, and I know this is going to get confusing because there's 1692E and there's also 1692 parentheses E. I'm referring to 1692 parentheses E that indicates or outlines that the purpose of the statute is to govern interaction between debt collectors and consumers. Right. And so the difficulty I have with your — I'm just going to cut straight to the chase. It just seems to me that if an entity can buy debt and then outsource the interaction you're talking about, that seems to be a pretty direct circumvention of this statute. So one of the things Congress was concerned about is consumers were being harassed, apparently, at the time this statute was born, and debt collectors didn't have a great incentive to be concerned about ongoing customer relations or reputation or whatnot. But Macy's Department Store — and I don't mean to be picking on Nordstrom. We're in Portland. We can just — you know, another supplier of goods or services that does, if the principal purpose is to supply other goods or services, there is sort of a built-in mismanners. Not so with debt collectors. But your entity is of a different stripe. Your entity, as you argue, only buys debt. That's correct, yes. And then wants somebody else to do the collecting. So why — if we read this statute so that your principal purpose doesn't include collecting debt or liquidating it, why shouldn't I just say that would be a circumvention of this statute, please? Judge, I have to take you back to 1977 when the statute was codified because the debt buyer didn't exist. It's set forth when the Third Circuit, Barbato talks about it, Tepper talks about it, the debt buyer is new to the game, if you will, after 1977. So, you know, it would be difficult for me to say that I'm trying to circumvent the statute because I don't believe that Congress had the debt buyer in mind when it codified the statute in 1977. But we have to look at direct or affirmative conduct, and that's what's required when you look at the term collection. We talked a little bit about — my adversary talked about purpose this morning, but I want to focus on collection because that's where Barbato got it wrong. The Third Circuit indicated that collection was a noun. We think that collection or DNF thinks that collection asks for affirmative conduct, and that makes sense and is consistent with the overall purpose of the statute. Well, if the overall purpose of the statute is what you're relying on, you're going to have to spend some time on that for me because we don't headlong march into circuit splits lightly, and that's what you're asking, at least from my vote, that's what you're asking me to do. So now we would be creating a circuit split. So could you back up and give me your best shot at why I should read this as a verb? As a verb? Because we have to look at the — look, Judge Hernandez of the District Court thought it was a verb when he looked at it plainly. I agree with him. But if you look at the overall structure of the statute, the whole idea is talking about the conduct and the communication between a debt collector and a consumer, when a debt collector can make telephone calls, when he can't make telephone calls, what is said during those telephone calls, when a letter must be sent, what the substance of the letter said. So the whole overall purpose is interaction. Every time the word collect, collects, collection is referenced in the statute, it references affirmative conduct. If we accept Ms. McAdory or the appellants or Barbados — Affirmative conduct with the consumer, with the plaintiffs. Correct. If we accept McAdory's interpretation of the statute, we would be looking at the noun, and the only time in the statute that we would be looking at collection in the principal purpose definition would be a noun. And it would fly in direct contrast to what Congress was trying to do. If we look at the Senate committee notes, it says, the committee intends the term debt collector, subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. Counsel, that doesn't — you keep wanting to have it both ways. So you just told me that at the time Congress enacted the statute, people didn't do what your client does, and perhaps that's because the statute didn't exist, and now entities are trying to circumvent the statute by slicing up their business. So it just strikes me that that's not particularly helpful. Do you want to respond to that? I don't think that entities are trying to circumvent the statute, Judge. I think that Congress has to modify the statute. Congress has to — Does your client do anything else other than — or you don't purport to be trading debt? It does sell — my client does sell debt, Judge, and I think, unfortunately, because this is a 12b-6, I have to live with the allegations in the three iterations of the complaint. Right. But for the sake of this conversation, DNF does sell debt. It does purchase debt. It does sell it. You know, and there is no allegation that DNF engages in any kind of affirmative conduct because it doesn't. It doesn't make telephone calls. It doesn't send letters. The only allegations in the second — the First Amendment complaint and the Second Amendment complaint are that DNF contracts with third parties for them to make telephone calls and send letters and go through that process. So we don't have — we are stuck with the 12b-6 allegations, and I understand that that ties your hands, but — It does. — because we're not at summary judgment and you don't have that in the record. Correct. So you're relying on the statutory interpretation argument. I am relying on the statutory interpretation. To me, this comes down to what the word collection means and whether it is a noun or a verb or whether it requires affirmative — whether it requires affirmative conduct. But the first point — another point I want to make is that DNF is a creditor here. The definition of creditor in the statute is any person to — in part, any person to whom a debt is owed. And if you're a creditor, you can't be a debt collector. And the only time a creditor can be a debt collector under the statute is if the creditor, in your example, Judge Macy's, is calling and collecting on his own under your name. Let's call it Brendan Little Collections. That is the only time that a creditor can be a debt collector. Okay? My adversary wants to argue that Barbado got rid of that mutual exclusivity test, meaning debt collector or creditor, but that is not true. The whole basis of that argument was the default test as to whether you became a debt collector when you acquired a debt after it was in default. And the Supreme Court did away with that in Henson. But my opponent continues to argue that because of Barbado, it gets rid of that mutual exclusivity test. And that is just not true because the Third Circuit, months after — this is an April of 2019 case, Frazier v. Morristown Memorial Hospital, found on a motion to dismiss, affirming it, quote, The FDCPA does not apply to creditors who collect on their own debts. It applies only to debt collectors who collect debts owed to another. So mutual exclusivity — Did you cite that case in a 28J letter? I'm sorry? Did you cite Frazier v. Memorial Hospital in a 28J letter? I did not. Do you have a citation? I do, Judge. It's 767FAPPX371. And that, again, is April 12th, 2019 from the Third Circuit. It's not a published opinion. It is not. It's a memorandum disposition. I can't recall off the top of my head, Judge. I'd have to go back, and I'm happy to do a post-submission brief if the Court requires. It sure wouldn't be precedent in this circuit. It isn't. What is — this Court did address this particular issue in Schlegel v. Wells Fargo, and my opponent does argue that this Court rejected mutual exclusivity. This Court did acknowledge — or not rejected mutual exclusivity but made a creditor. You could not be a debt collector. And this Court did acknowledge that other circuits have created a mutual exclusivity test. If you are a creditor, you can't be a debt collector. But DNF is not asking for a per se rule because, as I just indicated, a creditor can be a debt collector when it is collecting on its own account but using a third-party name. And, again, my example, Macy's being Brendan Little Collections. There, Macy's can be a debt collector and a creditor because it is a third-party name, which is the overall purpose of the statute because the whole idea is to govern interactions between a consumer where the consumer perceives that there is a third-party debt collector involved. And that's why I believe that exception is in the statute. So why was Barbato wrong? Barbato is wrong, Judge. Why? Because — A distinguished panel. Not as distinguished as this panel, Your Honor. That's what they all say. Barbato is wrong because, as I indicated, the overall purpose or overall reach of the statute is to govern interactions, govern affirmative conduct, when calls can be made, when calls can't be made, what can be said during the calls, when the letters must be sent, what the contents of the letter must be sent. Barbato chose the noun with no basis. I think with the end in result, came up with it, backed in to determining that it was a noun and did not require affirmative conduct. Well, I don't know. The statute talks about principal purpose, right? It doesn't say principal activity. That does lend itself, it seems to me, to be a noun rather than a verb, the principal purpose. Well, I'm not looking at the purpose. I'm talking about collection, Judge, and whether — I am, too. I am, too. And you have to construe that in context with the principal purpose of which is the collection of. And since we're talking about purpose in this phrase, it seems to me more likely that collection refers to a noun. If we accept it as a noun, it is the only time the word collect or a derivative of the word collect would be found to be a noun. If we look through the entire balance of the statute, every time we talk about collect, collections, collecting, it all talks about conduct that is allowed to happen or conduct that is specifically precluded or prohibited. So they're all referring to affirmative conduct. And I believe the Seventh Circuit case in McCready, and I'm going to quote, says to be a debt collector under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt. It's evidenced by the statute's use of active verbs, plural. And in making that quote, the preceding comment is it doesn't matter under which prong of the FDCPA you're trying to hold the creditor responsible for. So you're not taking the position, are you, that you've made no effort to That's why you engage this other entity, and that's why at least, according to the allegations, your client, I'm sure, as owner of the paper, is still dictating the terms that will be acceptable when the debt is compromised. Again, unfortunately I'm bound by the allegations in the Second Amendment complaint, but I am taking the position that we did not engage in any affirmative conduct. Yes, there is a contract. Yes, it is outsourced to a third-party agency. Right, and so you don't think, that's my question, you don't think that is disputed? You don't think that outsourcing is taking any affirmative conduct? It is not disputed, and I do not think outsourcing it to a third-party is taking affirmative conduct. Okay. The affirmative conduct is actually making the telephone calls or sending the letters or having the interaction with the consumer, and that is not what DNF is doing here, and it's not what is alleged in the amended complaint. This is, you know, I again go back to the point of DNF is a creditor, and it is, I'm assuming for the sake of, for the argument that it is a debt collector, it is not engaged in any of the affirmative conduct. There are quite a number of cases that construed this statute before and after the amendment, the amendment to eliminate the exemption for lawyers, and during those cases when entities hired lawyers to work as debt collectors, was the liability? It was not. I mean, it goes back to whether first you meet the definition of a debt collector first, whether we can talk about vicarious liability. In the Fox case, the Citibank met the definition of debt collector, so the fact that they hired an attorney. Correct. And doesn't, okay. Correct. Yeah, it's, you know, we don't dispute that, you know, the third-party attorney is no different than the third-party debt collector. It's hired as a third-party to engage in the collection activity. Right. I was just referring to the conduct of engaging the attorney, which seems to me to be directly analogous. And I agree with my adversary. I guess there's one thing we do agree on here this morning is that you first need to be found to be a debt collector under the statute before we can talk about vicarious liability, and I believe that is the only issue before this court is. I don't see why that's necessary, but he's given that argument up. You don't have to beat it to the ground. Do you agree with the question that I, when I told, when I mentioned that he was frightening me because I thought that he was arguing that, and do you agree that that would be a very dramatic expansion of this statutory? Absolutely. And I'm not advocating for it, and neither is my opponent. So respectfully, I don't think we need to go there. Unless there's any, I see my time is almost up, unless there's any other questions from the panel, I ask that the court affirm Judge Hernandez below and affirm the dismissal of the amended complaint. Thank you. First, I'd just briefly like to address the issue. There was a discussion of a bunch of recent Third Circuit precedent as to whether or not the categories are mutually exclusive. I don't think this court needs to look at the Third Circuit precedent because I think this court's own precedent in Schlegel is quite clear, and Schlegel adopted the view that was then later adopted by the Supreme Court in Henson, so Schlegel remains good law, and Schlegel is quite clear in saying that there is no basis, we find no support in the text of the FDCPA for the idea that the categories are mutually exclusive. So I think certainly an unpublished opinion from the Third Circuit does not need to be considered by the court given explicit holding from this court. I think the debate over whether collection is a noun or a verb is a side issue that I don't think actually goes to the issue in this case because purpose is what we're looking at. First of all, I think collection, the form collection versus collect, are different words, and so collection is a noun. Whether it's referring to someone who actively engages in collection is not inherent in the word collection. We know that one can directly or indirectly collect based on the other definition of provision, and one's purpose can be achieved directly or indirectly, inherently in the concept of a purpose. So one can have a purpose of collection, and how they choose for that purpose to be carried out can be carried out directly or indirectly. It doesn't make a difference to what your purpose is. Your purpose is seeing that action done, and we agree someone somewhere in the chain does have to collect the debt, but it doesn't mean if that's your purpose that you yourself have to directly do it. I also think some of the arguments about legislative purpose are irrelevant. One, I think that the legislative intent are irrelevant because I think there's no indication Congress didn't intend for this to apply here. Congress did not know and was not thinking of text messages or e-mails, but certainly the FDCPA applies there. So I think as long as it's an entity that has a purpose of debt collection, it applies, regardless of whether Congress thought about this scenario. And I think also it's important to think who would be covered by this if there were a direct interaction requirement. Essentially, it would be duplicative of the second definition, except for debts owed or due to another. It would be a weird way for Congress to set up two definitions, that only one says any debts and one says debts owed or due to another if that were the only difference, they would have used the same words. It would be regularly collects any debts or regularly collects dues owed to another. It wouldn't be has a principal purpose of debt collection of any debts or regularly collects debts due to another. Congress was going at two different things here, and it goes to companies whose main existence, their lifeblood, is debt collection. The second definition of regularly collects debts of another is different from principal purpose of debt collection, because a Macy's who, if it collects its own debts, would be under the debt collection principal purpose, but not regularly collecting for some other. So they're not duplicitous. Correct. So it would be slightly different in because regularly versus principal. So perhaps it could be principally collects. And other versus himself. Correct. But I think we have to drop out any debts versus owed due to another and are comparing regularly collects and principal purpose of collection. If you cut off words, yes. Well, yes. And I think these are, you know, there is certainly a category that overlaps, and it is, you know, I think if we could think that the principal purpose was designed for things that Congress did not have before it at the time. It is a catchall for entities that do have a principal purpose of debt collection that maybe it did not explicitly cover in the other. And my time is up. Thank you both for a very illuminating argument on an interesting case of first impression, I think, in this circuit, which will give us a lot of time to think about it. That completes the calendar for today, and we stand adjourned until 9 a.m. tomorrow morning. Thank you.
judges: Farris, Bea, Christen